STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

November 6, 2015
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**Terry Amaker and Sonya Amaker,**
**Defendants Below, Petitioners**

**vs)     No. 15-0203** (Berkeley County 13-C-797)

**Hammond's Mill Homeowners Association, Inc.,**
**Plaintiff Below, Respondent**


**MEMORANDUM DECISION**

Petitioners Terry Amaker and Sonya Amaker, *pro se*, appeal the June 29, 2015, amended final order of the Circuit Court of Berkeley County granting summary judgment to Respondent Hammond's Mill Homeowners Association, Inc. The circuit court ruled that (1) petitioners must remove a fence from respondent's property; (2) if petitioners do not remove the fence, respondent may remove it and assess costs against petitioners; (3) respondent may also remove the landscaping associated with the fence; (4) petitioners are enjoined from erecting a new fence on respondent's property; (5) petitioners must reimburse $175 to respondent for the survey that determined the property lines; and (6) petitioners must reimburse respondent $33,887.03 in attorney's fees.[1] Respondent, by counsel Kenneth J. Barton, Jr., Austin M. Hovermale, and Amber M. Moore, filed a response.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these

---

[1]The original final order was entered on February 17, 2015, and contained a clerical error because it erroneously recited "Lot 48" instead of the correct "Lot 92." On May 14, 2015, the circuit court requested that this Court remand this case for the limited purpose of entering an amended order correcting the error. This Court granted the circuit court's request and remanded the case for the entry of the June 29, 2015, amended final order by an order entered on May 27, 2015. Because the orders are otherwise identical, we refer only to the amended final order except where necessary. *See* discussion *infra*.

1

reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioners, husband and wife, own Lot 92 within the Hammond's Mill subdivision in Berkeley County, West Virginia. Petitioners and respondent, the subdivision's homeowners association, became involved in a dispute as to whether the fence petitioners erected in their backyard encroached on a common area, which belonged to respondent.

Petitioners retained an attorney who wrote respondent on April 24, 2013, demanding that respondent not engage in self-help and remove the fence. After receiving the April 24, 2013 letter, respondent retained an attorney who subsequently wrote petitioners on August 20, 2013, explaining that the fence was in violation of the subdivision's restrictive covenants, requesting that petitioners remove the fence from respondent's property, and advising that if the fence was not removed, respondent would file an action to enforce the restrictive covenants and that any such action would include a claim for reimbursement of attorney's fees and costs pursuant to the restrictive covenants.[2] Petitioners did not respond to the August 20, 2013, letter or remove the fence.

Respondent filed the instant action against petitioners on November 1, 2013, in the Circuit Court of Berkeley County. Respondent subsequently filed a motion for summary judgment, which the circuit court granted in its amended final order. In an earlier order, entered on December 1, 2014, the circuit court found that mediation had narrowed the issues in controversy:

> [Petitioners] admitted to the Court that their fence is built on [respondent's] land and represented to the Court that [petitioners] will bear the full cost to remove the fence from [respondent's] land. Therefore, the remaining issue is whether [respondent] is entitled to be reimbursed for costs and fees incurred in enforcing the Restrictive Covenants against [petitioners].

On January 8, 2015, the circuit court held an evidentiary hearing on respondent's claim to be reimbursed for attorney's fees and costs. Thereafter, the circuit court entered its amended final order granting respondent's motion for summary judgment, ruling that: (1) petitioners must remove their fence from respondent's property; (2) if petitioners do not remove the fence, respondent may remove it and assess costs against petitioners; (3) respondent may also remove the landscaping associated with the fence; (4) petitioners are enjoined from erecting a new fence on respondent's property; (5) petitioners must reimburse $175 to respondent for the survey that determined the property lines; and (6) petitioners must reimburse respondent $33,887.03 in attorney's fees.

Petitioners now appeal the circuit court's June 29, 2015, amended final order granting

---

[2]The April 24, 2013, letter requested direct communication with petitioners rather than their attorney.

summary judgment to respondent.[3] In Syllabus Point 1 of *Painter v. Peavy,* 192 W.Va. 189, 190, 451 S.E.2d 755, 756 (1994), this Court held that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Pursuant to Rule 56(c) of the West Virginia Rules of Civil Procedure, summary judgment shall be granted provided that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Furthermore, "[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party[.]" Syl. Pt. 4, in part, *Painter*, 192 W.Va. at 190, 451 S.E.2d at 756.

We find that the circuit court's amended final order adequately resolves all issues raised by petitioners except for the three issues that we now address. First, petitioners note that the original final order identified the wrong lot as being owned by them. We determine that this issue was resolved by the entry of the amended final order which corrected that clerical error. While the circuit court entered the amended final order after petitioners had appealed this matter, our May 27, 2015, order allowed the entry of a corrected order.

Second, petitioners asserted that their counsel did not provide them with effective assistance. Respondent counters that, in civil cases, there is no constitutional guarantee of effective assistance of counsel. *See* Franklin D. Cleckley, Robin Jean Davis, and Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure*, § 59(a), at 1279 (4th ed. 2012) ("A civil litigant does not have a constitutional or statutory right of effective assistance of counsel in a civil case."). We agree with respondent and find that this issue lacks merit.

Third, petitioners assert that respondent proceeded against them because of racial animus based on the fact that, according to petitioners, respondent filed a similar action against another minority family.[4] We note that each case must be decided on its own facts and petitioners do not dispute the circuit court's finding that their fence was on respondent's property. Therefore, we find that this issue lacks merit.

Having reviewed the circuit court's June 29, 2015, amended final order, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to all other issues raised by petitioners in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision. We conclude that the circuit court did not err in granting summary judgment to respondent.

---

[3]The circuit court entered a stay of its final order on condition that petitioners post a bond for the full judgment amount within ten days. Petitioners did not post such a bond; accordingly, the stay expired, by its own terms, after ten days. By a letter received on August 5, 2015, petitioners informed this Court that respondent had the fence and associated landscaping removed from its property on July 30, 2015.

[4]Petitioners indicate that they are African-American.

For the foregoing reasons, we affirm the June 29, 2015, amended final order granting summary judgment to respondent.

Affirmed.

**ISSUED: November 6, 2015**

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

4

## IN THE CIRCUIT COURT OF BERKELEY COUNTY, WEST VIRGINIA



HAMMOND'S MILL
HOMEOWNERS ASSOCIATION, INC.,
a West Virginia Corporation,

    Plaintiff,

v.

    Civil Action No.: 13-C-797
    Judge Silver

TERRY AMAKER AND
SONYA AMAKER,

    Defendants.

### AMENDED[1] FINAL ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On January 8, 2015, this Court conducted a full evidentiary hearing upon the request for attorney's fees and costs made by Plaintiff Hammond's Mill Homeowner's Association, Inc., in its Motion for Summary Judgment, filed pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, which was still pending before this Court. Plaintiff was present in person and represented by Counsel, Kenneth J. Barton, Jr., Amber M. Moore, and Steptoe & Johnson, PLLC. Defendants Terry Amaker and Sonya Amaker were also present in person and represented by Counsel, Jeffrey Burcham. This Court has carefully considered the Motion and Memorandum of Law in Support of the Motion, any opposition to the Motion and further replies thereto, and the testimony and exhibits presented at the evidentiary hearing on attorney's fees

---

[1] This Amended Final Order is entered solely to correct a single clerical error made in the Final Order entered February 17, 2015. The Court entered the Final Order on February 17, 2015 and as a proposed order presented to the Court by Plaintiff's Counsel, it erroneously recited "Lot 48" instead of the correct "Lot 92" in paragraph 6 of the Findings of Fact section. As this matter is currently on appeal as Case No. 15-0203, this Amended Final Order is entered pursuant to the Order entered by the West Virginia Supreme Court of Appeals on May 27, 2015, granting such limited remand for the purpose, as explained by this Court in its Order entered May 14, 2015, to enter an Amended Final Order correcting such clerical error.

and costs, and is of the opinion that the Motion is proper and should **GRANTED**. In support of its ruling, the Court makes the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

1. Plaintiff Hammond's Mill Homeowners Association ("HOA") filed this lawsuit to enforce the restrictive covenants governing the Hammond's Mill residential subdivision ("Hammond's Mill") and to prevent Defendants from trespassing on Plaintiff's property.

2. When it developed Hammond's Mill, Panhandle Homes of Berkeley County, Inc. ("Panhandle Homes") created storm water management, drainages spaces and other common areas and facilities for the benefit of this residential community.

3. The HOA was incorporated by Panhandle Homes in June 2003 to administer and maintain the Hammond's Mill properties and facilities and to enforce the restrictive covenants, and Steptoe & Johnson PLLC has been counsel for the HOA since June 2003.

4. The Restrictive Covenants consist of the Declaration, the Bylaws, and the rules promulgated by the Board of Directors in accordance with the Declaration and Bylaws. These rules include the Fences Architectural Standards. *See* Pl.'s Ex. 3, 4, and 5.

5. Panhandle Homes was responsible for operating the HOA from 2003 to 2011.

6. Defendants Terry and Sonya Amaker ("Defendants") purchased their home, which is located at Lot 92 in Hammond's Mill, in 2005.

7. In 2009, Defendants installed a black metal fence at their residence. Part of this fence encroached upon the HOA's property, specifically a twenty-foot common area located at the rear of Defendants' property.

8. In July 2009, Panhandle Homes sent two letters via its Property Coordinator, Lyn Marsh Hansen, to Defendants notifying them that this black metal fence was encroaching on

2

HOA property, specifically the twenty-foot common area located behind Defendants' home that is used as an access point to the storm water management pond and for utility companies or contractors to access other homeowner properties. *See* Pl.'s Ex. 1 and Pl.'s Ex. 2.

9. As part of her duties as Property Coordinator for Panhandle Homes, Lyn Marsh Hansen manages the properties developed by Panhandle Homes until the class of membership shifts such that management of these properties shifts to the homeowners. Hammond's Mill was one of these properties.

10. Specifically, on July 20, 2009, Lyn Marsh Hansen sent a letter to Defendants informing them that there is a twenty-foot common area located behind Defendants' lots created for access to the storm water management area and the rear of all the adjoining lots. A copy of the recorded plat, enlarged and focused on Defendants' lot and the twenty-foot common area, was attached to this letter. This letter also informed Defendants that the black metal fence was preventing other homeowners' contractors from using the common area to access the homeowners' lots. Lyn Marsh Hansen requested that Defendants remove the black metal fence and other personal property they had placed in the common area. *See* Pl.'s Ex. 1.

11. Defendants did not remove the fence or personal property, and on July 29, 2009, Lyn Marsh Hansen sent a second letter to Defendants again requesting that Defendants remove the fence and personal property. In this letter, Lyn Marsh Hansen stated that the HOA may be forced to remove this personal property and fence if Defendants refused to do so by August 3, 2009, and that necessary action would be taken if Defendants refused to do so. *See* Pl.'s Ex. 2.

12. Because Panhandle Homes would have taken the necessary action to ensure that Defendants fence and personal property were not on HOA property and Lyn Marsh Hansen does

3

not recall further action being taken, she was under the belief that Defendants had removed their fence and personal property from the HOA's property.

13. In 2011, authority to administer the HOA passed to the homeowners, who elected a Board of Directors to manage the HOA and enforce the Restrictive Covenants.

14. The Restrictive Covenants require homeowners who wish to make any alterations to the exteriors of their residences to obtain approval from the Architectural Review Committee prior to making the desired changes. *See* Pl.'s Ex. 3, Ex. 4, and Ex. 5.

15. All fence installation at Hammond's Mill must be done in accordance with the Fences Architectural Standards, which are promulgated in accordance with the Declaration and Bylaws. *See* Pl.'s Ex. 5.

16. In August 2012, Defendants applied to the HOA for permission to install a wooden fence. *See* Pl.'s Ex. 6.

17. Because Defendants' initial application was deficient, the HOA requested additional information on August 9, 2012, and provided a copy of the Fences Architectural Standards, which set forth the requirements for fence installation at Hammond's Mill. *See* Pl.'s Ex. 7.

18. The Fences Architectural Standards require, in relevant part, the following:

> 12. Fences may be installed to the property-line; however the post foundation must be entirely on the fence owner's lot. The location of the property line is the sole responsibility of the homeowner. Fences may be installed from the corners of the house to the side property lines. The rear yard may be enclosed.

*See* Pl.'s Ex. 5.

19. The HOA requested that Defendants confirm, *inter alia*, that they would install the fence on their property line in accordance with the Fences Architectural Standards. Specifically, on August 9, 2012, the HOA stated to Defendants that "[t]he fence must be installed

4

SJ6802511.1

on your property. The plan you submitted does not indicate the location of the property lines. Are you installing the fence on the property lines?" *See* Pl.'s Ex. 7.

20. On August 10, 2012, Defendants confirmed to the HOA that the wooden fence would "replace current black fence on back property line." *See* Pl.'s Ex. 8.

21. Upon receiving Defendants' confirmation that the wooden fence would be installed on the property line and meet the other fence installation requirements, the HOA granted approval on August 10, 2012, contingent upon the installation being done "in accordance with the Architectural Standards." *See* Pl.'s Ex. 9.

22. Defendants installed the fence in September 2012.

23. The fence extends beyond Defendants' property lines onto the HOA's property located behind Defendants' lot.

24. Defendants maintain that because the new fence was installed in exact replacement of the black metal fence in the same location, it must have been on the Defendants' property line or at least that, to the extent that the black metal fence encroached upon the HOA's property yet had been permitted to remain in place (despite Ms. Hansen's July 2009 letter protesting the black metal fence and personal property and seeking their removal) until the Defendants went about seeking permission to replace the fence, this fence location was "grandfathered in" by Panhandle Homes. Defendants also argue that Panhandle Homes was aware of the black metal fence and thus agreed to its placement in that location. The Court is not persuaded by these arguments because Ms. Hansen testified the she, as an agent of Panhandle Homes, had sought removal of the black metal fence and personal property at the latest by July 2009. Despite these arguments by Defendants, the Court finds as a fact that this fence (and for that matter, the prior black metal fence also) was installed in violation of the restrictive

5

covenants governing the Hammond's Mill residences because it was installed not completely along Defendants' property line, but instead encroaching in varying amounts onto the HOA property, the common area.

25. On October 20, 2012, the HOA informed Defendants that the fence had been installed on the HOA's property in violation of the Restrictive Covenants and instructed Defendants to remove the fence within thirty days. The HOA also informed Defendants that it had been made clear to them on August 9, 2012, that the fence must be installed on Defendants' property and that Defendants had responded affirmatively that same day stating they would install the fence on their own property line. The HOA informed Defendants that if the fence was not moved within thirty days, then either a fine would be assessed to their account or a professional engineer or surveyor would be hired to locate the property line and relocate the fence to Defendants' property. *See* Pl.'s Ex. 10.

26. On October 21, 2012, Defendants refused to remove the fence and stated that they had received approval from Panhandle Homes via Lyn Marsh Hansen to install the black metal fence on the HOA's property. *See* Pl.'s Ex. 11.

27. Lyn Marsh Hansen testified at the evidentiary hearing that she never gave Defendants permission to install any fence on the HOA's property and never represented to Defendants where their property line was located.

28. On November 24, 2012, the HOA notified Defendants that the HOA was making arrangements to have the property lines located by professional survey and that Defendants would be responsible for the survey costs and fence removal if the survey showed that the fence was indeed installed on HOA property. Defendants did not respond to this letter. *See* Pl.'s Ex. 12.

6

29. A professional survey was conducted, and it showed that the fence extended onto HOA property by twelve feet at one end of the rear property line and by three feet at the other end of the rear property line. *See* Pl.'s Ex. 16.

30. On March 26, 2013, the HOA notified Defendants that the professional survey showed that the rear portion of Defendants' fence was located well beyond their property lines. The HOA again directed Defendants to remove the encroaching fence within thirty days or the HOA would make arrangements to remove the fence and assess the removal costs to Defendants' account. *See* Pl.'s Ex. 13.

31. Defendants then retained an attorney to write a letter to the HOA on April 24, 2013, demanding that the HOA not engage in "self help" and remove the fence. *See* Pl.'s Ex. 14.

32. After receiving the letter from Defendants' attorney, the HOA retained legal counsel and requested that a letter be sent in response to Defendants' letter dated April 24, 2013, again requesting that Defendants remove their fence from HOA property. *See* Pl.'s Ex. 16.

33. On August 20, 2013, counsel for the HOA sent Defendants a letter explaining that the Restrictive Covenants were violated and Defendants' fence is encroaching upon HOA property. This letter requested that Defendants remove the fence from the HOA's property and made clear that failure to remove the encroaching portion of the fence would result in the HOA bringing suit against Defendants to enforce the Restrictive Covenants. This letter also notified Defendants that a claim for the HOA's attorney's fees would be included in any suit for enforcement of the Restrictive Covenants. *Id.*

34. The Restrictive Covenants authorize the HOA to bring suit against a violating homeowner to enforce the Restrictive Covenants and require that the violating homeowner reimburse the HOA for attorney's fees and costs incurred:

7

(d) <u>Additional Enforcement Rights.</u>

> Notwithstanding anything to the contrary herein contained, the Association, acting through the Board of Directors, may elect to enforce any provisions of the Declaration, these By-Laws, or the rules and regulations of the Association by self-help . . . or by suit at law or in equity to enjoin any violation or to recover monetary damages or both without the necessity of compliance with the procedure set forth above. In any such action, to the maximum extent permissible, **the Owner responsible for the violation of which abatement is sought shall pay all costs, including reasonable attorney's fees actually incurred.**

(emphasis added.) *See* Pl.'s Ex. 4 at 15-16.

35. Defendants did not respond to this letter or remove the fence.

36. The HOA filed this lawsuit in November 1, 2013, and filed for summary judgment on February 18, 2014.

37. As a result of Defendants enclosing the HOA's property within their fence, Plaintiff has been deprived of the use of its property. Other homeowners are also deprived of the use and benefit of this common area property.

38. The Court finds that although Defendants may not have realized that the black metal fence they initially installed encroached upon the HOA's property line at the time of installation, nonetheless at least by the date Defendants would have received Ms. Hansen's July 20, 2009 letter, Defendants were placed on notice that they had installed their fence such that it encroached upon the HOA's property; thereafter, the Court finds, Defendants refused regardless of repeated documented demands, to remove the fence from the HOA's property.

39. Defendants have known since at the latest by July 2009 that the location in which they had their fence installed was owned by Plaintiff, and this installation thereby violates the restrictive covenants.

8

40. The Court finds that Defendants were never given approval by the HOA, or by Panhandle Homes, to install a fence on the HOA's property.

## II. CONCLUSIONS OF LAW

### Violation of Restrictive Covenants

1. The purposes of the restrictive covenants that govern the fence installation are to maintain Hammond's Mill home and property values and ensure that each homeowner enjoys the benefits of the storm water management system and the common areas.

2. The Hammond's Mill Restrictive Covenants, including the Fences Architectural Standards governing fence installation, are reasonable and valid.

3. By causing their fence to be built on Plaintiff's property, Defendants have violated the restrictive covenants governing fence installation.

### Trespass

4. By causing their fence to be built on Plaintiff's property, Defendants have trespassed on Plaintiff's property. *Hark v. Mountain Fork Lumber Co.*, 127 W. Va. 586, 34 S.E.2d 348 (1945).

5. The Defendant's continued and private use of Plaintiff's property makes injunctive relief the appropriate remedy. *Id.* at 592, 352.

### Attorney's Fees and Costs

6. The general rule regarding attorney's fees is that each litigant bears its own attorney's fees unless there is a contrary rule of court, statutory authority for reimbursement, or express contractual authority for reimbursement. Syl. Pt. 2, *Sally-Mike Properties v. Yokum*, 179 W. Va. 48, 365 S.E.2d 246 (1986).

9

7.    The Uniform Common Interest Ownership Act also allows for attorneys fees: "If a declarant or any other person subject to this chapter fails to comply with . . . any provision of the declaration or bylaws, any person . . . adversely affected by this failure to comply has a claim for appropriate relief. . . .   The court, in an appropriate case, may award reasonable attorney's fees. W. Va. Code § 36B-4-117.

8.    West Virginia law also recognizes an equitable exception to the general rule: the prevailing litigant may recover its "reasonable attorney's fees as 'costs," without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 51, 249. *See also Corp. of Harpers Ferry v. Taylor*, 227 W. Va. 501, 504, 711 S.E.2d 571, 574 (2011) (upholding circuit court's grant of attorney's fees to prevailing party because losing party's conduct prior to the litigation warranted the award of attorney's fees). *See also In re John T.*, 225 W. Va. 638, 642, 695 S.E.2d 868, 872 (2010) ("The trial court is vested with a wide discretion in determining the amount of court costs and counsel fees, and the trial court's determination of such matters will not be disturbed on appeal . . . unless it appears that it has abused its discretion) (internal citations omitted).

9.    The cost of a survey to establish a property boundary also should be awarded in a case of this nature. *See Bigham v. Peach Lake Farm Associations, Inc.*, No. 12-1373, 2013 WL 5508371 *6 (W. Va. Oct. 4, 2013) (memorandum decision) (upholding circuit court's order that violator of restrictive covenants must reimburse the property association $1,100 for the costs of a survey to determine boundary line).   Therefore, the HOA is entitled to recover the $175.00 it incurred in having the initial survey completed in late 2012 or early 2013. *See* Ex. 17.

10.    The Restrictive Covenants give express contractual authority for the HOA to recover its attorney's fees and costs from Defendants, and the Defendants have also acted in bad

10

faith both before and during the litigation. Therefore, the HOA is entitled to recover its attorney's fees and costs from Defendants in this matter.

## A. Express Contractual Authority is Provided By the Restrictive Covenants.

11. A losing party is required to pay the prevailing party's attorney's fees where there is express contractual authority for reimbursement. Syl. Pt. 2, *Sally-Mike Properties v. Yokum*, 179 W. Va. 48, 365 S.E.2d 246 (1986).

12. An award of attorney's fees is appropriate where the document governing the parties' relationship contains a clause allowing for recovery of attorney's fees. *See Moore v. Johnson Service Company*, 158 W. Va. 808, 821, 219 S.E.2d 315, 323 (1975) (where prevailing part was granted attorney's fees because the parties' commercial lease agreement contained a clause providing for recovery of reasonable attorney fees and litigation expenses to the prevailing party who sought enforcement of its provisions in litigation.).[2] Similar clauses in restrictive covenants governing residential subdivisions are enforced according to their plain language. *See Berry v. Mountain Air Property Owners Assn., Inc.*, No. 13-1324, 2014 WL 5312274 (W. Va. Oct. 17, 2014) (unpublished).[3]

13. The Restrictive Covenants **expressly mandate** that a violator pay all costs, including reasonable attorney's fees actually incurred, in a suit to enforce the Restrictive Covenants. Art. III, § C(22)(d) of the Restrictive Covenants authorizes the HOA to "enforce any provisions of [the Restrictive Covenants] . . . by suit at law or in equity to enjoin any violation . .

---

[2] The West Virginia Supreme Court of Appeals also addressed W. Va. Code § 59-2-14, which provides for the award of statutory attorney fees in the amount of $10.00 per case. The Court reasoned that Section 59-2-14 does not prohibit courts from enforcing contract provisions that provide for attorney's fees. 158 W. Va. at 819, 219 S.E.2d at 323.

[3] *See Day v. Santorsola*, 76 P.3d 1190, 1204 (Wash. Ct. App. 2003) (where trial court awarded prevailing party $97,362.00 in attorney's fees in accordance with restrictive covenant that granted attorney's fees in a "successful action," the court on appeal remanded only for entry of findings of fact and conclusions of law to support computation of attorney's fee award).

11

. [and] to the maximum extent permissible, the Owner responsible for the violation of which abatement is sought **shall** pay all costs, including reasonable attorney's fees actually incurred." (emphasis added).

14.     Therefore, according to the plain language of the Restrictive Covenants, Defendants must reimburse the HOA all costs and reasonable attorney's fees incurred in enforcing the Restrictive Covenants against them.

**B.  Defendants Acted In Bad Faith Both Before and During this Litigation.**

15.     "'Bad faith' may be found in conduct leading to litigation or in conduct in connection with the litigation." *Sally-Mike Properties*, 179 W. Va. at 51, 365 S.E.2d at 249 (citing *Hall v. Cole*, 412 U.S. 1, 15 (1973)).

16.     Defendants have acted in bad faith both before and during this litigation. Although the Court does not find as a fact that Defendants initially knowingly installed the black metal fence beyond their boundary line and upon HOA property, the Court does find that Defendants' bad faith is shown by their subsequent refusal to remove the fence or to resolve the HOA's numerous attempts to resolve this matter pre-litigation, all of which unnecessarily prolonged this litigation.

17.     Defendants' refusal to remove the fence from the HOA's property which is cause to award attorney's fees for bad faith. *See Miller v. Lambert*, 196 W. Va. 24, 33, 467 S.E.2d 165, 174 (1995) (where evidence was presented to the jury that the homeowner knowingly installed his fence on his neighbor's property and threw the boundary markers into the river, the Court upheld a jury's award of attorney's fees on the basis of bad faith where there was evidence that one party knowingly encroached on his neighbor's property).

12

18. The Court finds that Defendants knew that the Restrictive Covenants require fences to be installed on homeowner property but that without determining their boundary line with precision or taking care not to encroach upon another landowner's property nonetheless still installed their black metal fence on HOA property in 2009, and replaced it in September of 2012 in the same location despite having been given notice of the encroachment upon HOA property at least by July of 2009.

19. Furthermore, Defendants had known since at least July of 2009 that a twenty-foot common area owned by the HOA was located directly behind their lot and that placing a fence or other property on the HOA's property would not be tolerated. *See* ¶¶ 8-11, *supra.*

20. When Defendants installed their current fence, they knew they were installing the fence upon Plaintiff's property and encroaching onto the twenty-foot common area.

21. Prior to filing this lawsuit, the HOA gave Defendants numerous opportunities to move their fence. *See* ¶¶ 25-33, *supra.* Indeed, the HOA's attempts to resolve this matter without litigation spanned a full twelve months.[4] These attempts were met with utter refusal.

22. Even after litigation commenced, Defendants still refused to resolve the matter but instead prolonged this litigation and thereby increased litigation costs. Even after the HOA filed its motion for summary judgment, attaching the results of the professional survey showing the boundary lines, Defendants insisted upon filing over 100 pages of various documents as a response. Defendants did not decide to hire an attorney until the hearing for arguments on the motion for summary judgment. Two months later, Defendants represented they wanted to conduct discovery, and this matter was continued once again to allow Defendants this opportunity. Defendants never conducted any discovery.

---

[4] The HOA attempted to resolve this matter without legal action from October 2012 until November 2013.

SJ6802511.1

23. It was not until after the parties mediated this matter that Defendants admitted their fence is installed on HOA property and agreed to remove it; Defendants admitted this fact before this Court on October 27, 2014, at a post-mediation status hearing.

24. Furthermore, a party seeking to enforce a valid contractual agreement should not suffer financially for another party's failure to abide by that covenant, and this is also cause for a court to award attorney's fees on the basis of bad faith. *See Messer v. Huntington Anesthesia Group, Inc.*, 222 W. Va. 410, 420, 664 S.E.2d 751, 761 (2008) (internal citation omitted) (holding that a party required to seek the court's assistance to enforce a "valid and enforceable settlement agreement" should not "have to bear the financial burden caused by" the opposing party's refusal to abide by that agreement and should pay the enforcing party's attorney's fees).

25. In sum, the HOA should not be required to bear the financial burden caused by Defendants' refusal to resolve this matter without extensive litigation, and the HOA is entitled to recover attorney's fees and expenses incurred in this matter based upon the express provisions of the Restrictive Covenants and equity.

### The HOA's Attorney's Fees are Reasonable

26. The West Virginia Supreme Court of Appeals has not set forth a test for determining reasonable attorney's fees where a homeowner has violated a restrictive covenant.[5]

27. The Court has held, however, that "[w]hether a specific award of attorney's fees is reasonable depends upon a consideration of numerous factors." *In re John T*, 225 W. Va. 638, 647, 695 S.E.2d 868, 877 (2010). The Court applies what are known as the *Pitrolo* factors to determine whether the attorney's fees sought are reasonable:

---

[5] The only case to mention a test for this particular instance is *Corporation of Harper's Ferry v. Taylor*, 227 W. Va. 501, 506 n.6, 711 S.E.2d 571, 576 n.6 (2011), where the Court notes that the non-prevailing party cited the test applied to when attorney's fees are sought against a third party. The Court notes that the non-prevailing party cited this test "without discussion" and that the Court will not address this point because it was not raised on appeal as no challenge was made to the amount of fees awarded. 227 W. Va. at 506 n.6, 711 S.E.2d 571 n.6.

14

> Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Syl. Pt. 4, *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W. Va: 190, 191-92, 342 S.E.2d 156, 157 (1986).[6]

28. In this matter, counsel for the HOA worked 157.9 hours in pre-suit attempts to resolve the matter, drafting and filing the pleadings, drafting and filing the dispositive motions and replies to the responses in opposition, conducting preliminary settlement discussions, preparing for and attending mediation, preparing for and attending the evidentiary hearing, and drafting the final proposed order. This is a reasonable number of hours, especially given Defendants' continued refusal to resolve this matter out of court.

29. The fees[7] charged by HOA's counsel are reasonable and customary for this area, and the HOA has a long-standing relationship with its counsel. *See* ¶ 3, *supra*. Also included in the fees from HOA's counsel is the cost of the drawing and further evaluation completed by the engineering company, which totaled $385.00.

30. Furthermore, it is not the amount of attorney's fees that determines reasonableness. In her concurring opinion in *Horkulic v. Galloway*, Justice Davis noted in a

---

[7] Over the course of nearly one and a half years, the rates were $200.00-$220.00 per hour for the associate and $375.00-$395.00 per hour for the partner. The vast majority of the work was done at the associate level. Less than ten (10) hours were charged at the partner rate. The paralegal rate was $140.00-$150.00 per hour.

15

concurring opinion that "the determination of whether fees are reasonable is simply a fact driven question that must be assessed under the *Pitrolo* factors." *Horkulic v. Galloway*, 222 W. Va. 450, 466, 665 S.E.2d 284, 300 (2008) (Davis, J., concurring). In her concurrence in *Horkulic*, Justice Davis noted that attorney's fees of $500 per hour were not *per se* unreasonable:

> Indeed, nothing in the majority opinion should be read as concluding that the amount of the attorney fees claimed by the Horkulics' is per se excessive. *See, e.g.*, Claypool v. Barnhart, 294 F. Supp. 2d 829 (S.D. W. Va. 2003) (awarding $18,000 in attorney's fees for 12.56 hours of legal work based on contingency fee agreement); Arneault v. Arneault, 216 W.Va. 215, 605 S.E.2d 590 (2004) (awarding $241,034.42 for attorneys and experts based upon proper proof).[8]

*Id.* (where attorney's fees were sought in the amount of $50,750.00 for 101.5 hours plus expenses in the amount of $54.00).

### III.   RULING

For the foregoing reasons, it is hereby **ADJUDGED** and **ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED**; and

It is **FURTHER ORDERED** that Defendants must remove the fence from the HOA's property by April 30, 2015, and restore the property to its original condition;

It is **FURTHER ORDERED** that if Defendants have not removed the fence from the HOA's property and restored the property to its original condition by April 30, 2015, then the HOA is authorized to use self-help and remove the fence or hire a contractor to remove the fence and assess all removal costs to Defendants' account for reimbursement;

It is **FURTHER ORDERED** that if Defendants wish to reclaim and keep the trees and other landscaping they have planted on the HOA's property, all such landscaping must likewise

---

[8] Proper proof was provided in this matter as counsel for the HOA provided a detailed invoice of all fees and expenses in this matter upon submitting the proposed orders as required by this Court.

16

SJ6802511.1

be removed by April 30, 2015, and after this date, the HOA may remove this landscaping, dispose of it and charge the removal costs to Defendants' account;

It is **FURTHER ORDERED** that Defendants are permanently enjoined from installing a fence on Plaintiff's property;

IT IS **FURTHER ORDERED** that Defendants shall reimburse the HOA for the cost of the survey conducted to determine their property lines, this amount being $175.00 and that Plaintiff shall have a **JUDGMENT** against Defendants for this amount;

IT IS **FURTHER ORDERED** that Defendants shall reimburse the HOA for its reasonable attorney's fees and costs actually incurred in this matter, this amount being $33,887.03, and Plaintiff shall have a **JUDGMENT** against Defendants for this amount.

This is a Final Order. The Clerk is directed to close this case, place it among cases ended and forward attested copies hereof to the following persons:

Kenneth J. Barton, Jr., Esquire
Austin Hovermale, Esquire
STEPTOE & JOHNSON PLLC
1250 Edwin Miller Boulevard, Suite 300
Martinsburg, West Virginia 25404
*Attorneys for Plaintiff*

Terry and Sonya Amaker
349 Sheerer Drive
Martinsburg, WV 25404
*Defendants Pro Se*

Rory L. Perry, II, Clerk of Court
West Virginia Supreme Court of Appeals
State Capitol Complex, Room E-317
1900 Kanawha Blvd. East
Charleston, WV 25305

ENTER this 26th day of June, 2015.

_____
Gray Silver, III
Berkeley County Circuit Court

A TRUE COPY
ATTEST

Virginia M. Sine
Clerk Circuit Court

By:_____
Deputy Clerk

SJ6802511.1

17